UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL LOPEZ REYES,<br>Petitioner,<br>v.<br>WARDEN, et al.,<br>Respondents. | Case No. 5:26-cv-05272-PD<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RELEASE**<br><br>**A# 245-985-003** |

Manuel Lopez Reyes ("Petitioner") filed a counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Dkt. No. 1. The Court has considered the Petition, the attached exhibits, Respondents' answer, and Petitioner's traverse. For the reasons stated below, the Petition is granted in part.

## I. Background

Petitioner is a national and citizen of Mexico who entered the United States without inspection at the age of seventeen on or about April 19, 2024, along with his mother and younger sister. Dkt. No. 1, Petition ¶ 29. On April 20, 2024, the Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear, charging him as inadmissible under 8 U.S.C.

§ 1182(a)(6)(A)(i) as a noncitizen present in the United States without being admitted or paroled. *Id.* ¶ 31. Thereafter, DHS released Petitioner from custody. He traveled to Lompoc, California, and has resided there with his family ever since. *Id.* ¶ 32. On August 29, 2024, his mother filed a Form I-589 Application for Asylum and for Withholding of Removal with the immigration court and listed Petitioner as a child to be included in the application. *Id.* ¶ 33.

On March 8, 2025, DHS issued Petitioner an Employment Authorization Document, valid through March 4, 2030, and he holds a Social Security number for employment purposes. *Id.* ¶ 49. Petitioner initially worked as a gardener before beginning employment with a drywall company in December 2025. *Id.* ¶ 50. He filed federal and California income tax returns for tax year 2025, contributes toward his family's rent, household expenses, and monthly vehicle payments. *Id.* He also helps care for his niece. *Id.* ¶ 45.[1] Petitioner further alleges that he has complied with the conditions of his release for more than two years, has apprised the immigration court of his whereabouts, has appeared at every scheduled hearing, and was never re-arrested by immigration authorities. *Id.* ¶¶ 35, 48.

In August 2026, Petitioner was arrested on a charge of driving under the influence. *Id.* ¶ 36. He alleges that, "[a]s of the filing of this Petition, on information and belief, no case has been located in the system as pending" and states that he has no other arrests or prior criminal convictions in the United States or Mexico. *Id.* DHS has not charged Petitioner with any criminal grounds of removability, lodged any additional charges against him, or asserted that is subject to mandatory detention under 8 U.S.C. § 1226(c). *Id.* ¶ 37.

---

[1] Attached to the Petition are letters from people attesting to Petitioner's work ethic and character, including from his parents, sisters, uncle, and employer. *See* Dkt. No. 1-1 at 33–67.

On August 4, 2026, United States Immigration and Customs Enforcement ("ICE") took Petitioner into custody and transported him to the Adelanto ICE Processing Center. *Id.* ¶ 38. On August 7, 2026, ICE filed a Form I-830 with the immigration court, confirming Petitioner's detention at that facility; the form was executed by a deportation officer on August 4, 2026. *Id.* ICE did not conduct an individualized custody determination to assess whether Petitioner posed a flight risk or a danger to the community. *Id.* ¶ 39. Instead, ICE declined to set bond on the categorical ground that noncitizens who entered the United States without inspection are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *Id.*

On August 31, 2026, Petitioner's case was calendared before the Adelanto Immigration Court, which scheduled a master calendar hearing for September 16, 2026, before Immigration Judge Patrick D. Barrett.[2] *Id.* ¶ 40. Petitioner remains detained and no immigration judge has ever made a factual finding that he poses a flight risk or a danger to the community. *Id.* ¶¶ 43, 44.

According to Petitioner's Automated Case Information on the Executive Office for Immigration Review website, he was ordered removed on November 9, 2026, and his appeal to the Board of Immigration Appeals is due December 9, 2026. *See* https://acis.eoir.justice.gov/en/. Therefore, he is not subject to a final order of removal. *See* 8 C.F.R. § 1241.1(c) (a removal order becomes final "[u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time").

[2] Petitioner's mother's and sister's cases remain pending before the Van Nuys Immigration Court, where the individual merits hearing is still scheduled for January 3, 2028. *Id.* ¶ 40.

## II. Discussion

The Petition raises two claims: (1) Petitioner's detention violates the Immigration and Nationality Act ("INA") because Respondents are detaining him without bond pursuant to 8 U.S.C. § 1225(b)(2)(A), they have never made an individualized custody determination under § 1226(a) and have refused to permit one; and (2) that his detention without any custody determination or bond hearing violates due process.

Respondents oppose release and argue they are exercising their discretionary authority to detain noncitizens in removal proceedings. Respondents assert that Petitioner's "recent arrest for DUI should be weighed by an Immigration Judge at a bond hearing." Dkt. No. 9 at 2. Further, Respondents contend that "[t]o the extent a bond hearing is ordered here, it should be consistent with what Courts in this District have generally ordered in similar cases, which is to require an 8 U.S.C. § 1226(a) hearing to be provided in seven days." *Id.* Respondents attached no exhibits to their answer.

Petitioner argues in the traverse that Respondents notably did not contend that any of the procedures required under § 1226(a) occurred, such as providing an arrest warrant or that an officer assessed danger or flight risk. Dkt. No. 10 at 2.

### A. Detention Under 8 U.S.C. § 1226(a)

Section 1226(a) "sets out the general rule" for "the arrest, detention, and release" of "aliens present in this country" "who are believed to be subject to removal." *Nielsen v. Preap*, 586 U.S. 392, 396–97 (2019). Under Section 1226(a) and its implementing regulations, a DHS officer may arrest and take into custody a noncitizen "under the authority of Form I–200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b).

The Government "may" detain such individuals "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

DHS officers also have the authority to conduct a warrantless arrest if there is probable cause to believe a person is subject to removal and "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). *See generally Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). Such individuals must be promptly brought before an examining officer to determine if the person is subject to removal, 8 C.F.R. § 287.3(a), and referred for a custody determination within "48 hours of the arrest" absent an emergency or other extraordinary circumstances. 8 C.F.R. § 287.3(d).

Regardless of whether the individual is arrested pursuant to a warrant or DHS's warrantless arrest authority, DHS officers conduct an initial custody determination to decide whether to release or detain the person. 8 C.F.R. § 1236.1(c)(8). Unless the person is subject to mandatory detention under Section 1226(c) based on their criminal history, DHS has "the discretion either to detain the alien or to release him on bond or parole." *Nielsen*, 586 U.S. at 396. The DHS officer must release the noncitizen if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

DHS utilizes a Notice of Initial Custody Determination, Form I-286, to document its custody determinations. 8 C.F.R. § 236.1(g). The Form I-286 includes "the formal mechanism—a box the detainee may check—to immediately request" that an Immigration Judge ("IJ") review DHS's custody determination at a custody redetermination hearing (i.e., a bond hearing).

*Garcia-Maya v. Blanche*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026).

If the noncitizen checks this box, or otherwise requests a custody redetermination hearing, an IJ will set a hearing in Immigration Court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19. "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). The noncitizen can "appeal an adverse decision to the BIA." *Id.* (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." *Id.* (citing 8 C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is also appealable to the BIA." *Id.* The noncitizen may also seek judicial review of the immigration courts' bond determination through a habeas petition challenging the determination as constitutionally deficient, legally erroneous, or an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz*, 53 F.4th at 1202.

### B. The Constitutional Grounding for § 1226(a) Procedures

The Supreme Court has long recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id.* at 690–92. In the context of immigration detention, "it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (cleaned up). *See also Padilla v. United States Immigr. & Customs Enf't,* 192 F.4th 894, 914 (9th Cir. 2026) (recognizing that "the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of British and American legal traditions since the thirteenth century" and discussing the history of protections against arbitrary detention applied to noncitizens).

Section 1226(a) and its implementing regulations establish procedures to ensure that the Government only detains noncitizens where doing so advances its legitimate interests in preventing danger and mitigating risk of flight. Without such protections, there is an unacceptably high risk that that the noncitizen's confinement is not "reasonably related" to a legitimate purpose. *Zadvydas*, 533 U.S. at 690; *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1085 (N.D. Cal. 2025) ("Noncitizens subject to § 1226(a) therefore have a statutory as well as constitutional interest in remaining out of custody unless they pose a threat to the public or a flight risk.").

The mechanism for making such evaluations is the initial custody review, which ensures that DHS only detains a noncitizen where officers determine that detention is justified on an individualized basis and engages "in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Kelly v. Almodovar*, No. 25-cv-6448-AT, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (quotations omitted). It also "create[s] a record that permits meaningful review of whether the required procedure occurred." *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *5 (E.D. Pa. June 17, 2026) ("A contemporaneous, individualized custody determination [ ] require[s] ICE to explain why detention, rather than release on conditions, is necessary for *this* Petitioner.") (emphasis in original). And it is the "mechanism" by which noncitizens are advised that they can seek review before an IJ and provided an opportunity to request such review by checking a box on the Form I-286. *See Garcia-Maya*, 2026 WL 1965886, at *8.

Absent an initial custody review, a noncitizen may not be aware that they are eligible for a bond hearing or know how to request one. *See Castellanos Franco v. Warden, Adelanto ICE Processing Ctr.*, et al., No. 5:26-cv-05549-MWC-DMK, 2026 WL 2922670, at *4–5 (C.D. Cal. Sept. 29, 2026) ("Respondents' 'failure to provide petitioner with any of § 1226(a)'s 'substantial procedural protections,' . . . including the right to request an initial custody re-determination before an IJ under 8 C.F.R. § 1236.1(d), violated procedural due process.' ") (quoting *Rivas Garcia v. Current or Acting Field Dir.*, No. 1:26-cv-03245-DAD-SCR, 2026 WL 1265937, at *4 (E.D. Cal. May 8, 2026)). And even when a noncitizen requests a bond hearing before an IJ, it may be weeks or months until the hearing is scheduled. *See generally Trujillo-Hernandez v. Mullin, et al.*, No. 5:26-cv-03282-SP, 2026 WL 2826326, at *5 (C.D. Cal. Sept. 21, 2026).

In short, without an initial custody determination, a person could be confined for a prolonged period without any determination that such a profound deprivation of their liberty is actually justified.

Considering the critical importance of the procedures available under Section 1226(a) at the outset of an individual's detention, numerous courts have recognized failure to provide an initial custody determination is not only a statutory violation, but also a violation of a noncitizen's due process rights. *Lopez Esteban v. Warden-Facility Adm'r of Nw. Processing Ctr.*, No. 2:26-cv-02548-JHC, 2026 WL 2686824, at *4 (W.D. Wash. Sept. 14, 2026) (quoting *Pastrana-Beltran v. Mullin*, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) and collecting cases). *See also Occeus v. Warden, California City Detention Facility*, No. 1:26-cv-07057-TLN-SCR, 2026 WL 2858725, at *1 (E.D. Cal. Sept. 23, 2026) ("Petitioner was denied statutory and regulatory protections under § 1226(a) and 8 C.F.R. § 1236.1(d) for a period of months in this case, which constitutes a separate procedural due process violation."); *Angulo-Barbosa v. Blanche, et al.*, No. 2:26-cv-02102-RFB-BNW, 2026 WL 2676815, at *2 (D. Nev. Sept. 11, 2026) ("the Court finds Petitioner's detention without notice of an initial custody determination violates Petitioner's right to substantive and procedural due process"); *Rodriguez v. Knight*, No. 1:26-cv-00505-BLW, 2026 WL 2641448, at *3 (D. Idaho Sept. 8, 2026) ("the Government violated his due process rights by denying him the individualized custody determination required under § 1226(a)"); *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G. v. Genalo*, No. 26-cv-4521-AT, 2026 WL 1724325, at *4 (S.D.N.Y. June 15, 2026); *Curimilma Quille v. Blanche*, No. 26-cv-2818-HG, 2026 WL 1453889, at *4 (E.D.N.Y. May 22, 2026).

**C. Respondents' Failure to Comply with § 1226(a)**

Here, Petitioner was detained on August 4, 2026, and filed this Petition over five weeks later, on September 11, 2026. Petitioner alleges Respondents have taken the position that he is subject to mandatory detention under § 1225(b)(2)(A). Petition ¶ 6. He has never received an individualized custody determination, and Respondents have refused to permit one. *Id.* ¶ 89. Further, based on the information before the Court, Petitioner has never received a bond hearing. Respondents provide no argument or evidence to rebut Petitioner's allegations. In the absence of contrary evidence, the Court takes Petitioner's allegation that he was detained without the process provided in § 1226(a) to be true.

Respondents also do not contest Petitioner's assertion that he is part of the Bond Eligible Class certified in *Maldonado Bautista*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.), and therefore, he should have been treated under § 1226(a) the moment he was detained. Petition ¶¶ 83–85. Beginning in July 2025, DHS took the position that individuals who entered without inspection were detained under § 1225 and were not entitled to the protections set out in § 1226(a). *See Maldonado Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1094 (C.D. Cal. 2025) (describing policy). On July 30, 2026, the Ninth Circuit confirmed that those who entered without inspection are properly detained under § 1226, not § 1225, and are entitled to the protections of that statutory provision. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164–65 (9th Cir. 2026).

Petitioner was arrested five days after the *Rodriguez Vazquez* decision, and there is no evidence in the record showing that the procedures under § 1226(a) were followed. Petitioner's detention is accordingly unlawful. And by denying Petitioner the protections of § 1226(a), Respondents created an

unacceptably high risk that Petitioner's detention is not justified on danger or flight risk grounds.

For these reasons, the Court finds that Petitioner was detained in violation of his due process rights.

**D. Remedy**

Respondents argue that, "to the extent Petitioner would be entitled to any remedy via the Habeas Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under Section 1226(a)." Dkt. No. 9 at 1. As many of the courts to address this issue have concluded, the failure to comply with the procedures set forth by 8 U.S.C. § 1226(a) is unlawfulness that "cannot be cured through belated compliance with statutory requirements." *Zurita Navarro*, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); J.T.G., 2026 WL 1724325, at *4 ("Because J.T.G.'s detention was unlawful from the outset, the government cannot cure its procedural failures by providing a custody determination three weeks later."). *See also Lopez Esteban*, 2026 WL 2686824, at *4 (collecting cases); *Gonzalez v. Joyce*, No. 25-cv-8250-AT, 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2025) ("The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment.").

When Petitioner filed his Petition, he had been confined for over a month without any determination that his detention was warranted. A bond hearing belatedly conducted at some point in the future is " 'no substitute' " for an initial custody determination that would have established "a lawful basis for detention in the first instance." *Garcia-Maya*, 2026 WL 1965886, at

*8 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)).

Instead, because Petitioner's detention has been unlawful from the outset, the Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from detention." *Reyes v. Santacruz, Jr., et al.*, No. 26-cv-3394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026). The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

**IV. Order**

For the foregoing reasons, the Petition is GRANTED.

Petitioner Manuel Lopez Reyes (A# 245-985-003) is **ordered released** within 24 hours of this Order under the terms and conditions of Petitioner's existing release, as if Petitioner had not been detained. This Order does not provide Petitioner with blanket immunity from future detention – that relief is likely beyond the Court's jurisdiction – but any future enforcement actions after release must comply with Due Process requirements.

At the time of release, **Respondents are ordered** to return to Petitioner any of Petitioner's personal belongings that were seized from him, including all identification, work authorization, or other official documents.

**Respondents are further ordered** to file, within three days of Petitioner's release, a status report (1) confirming Petitioner's release, and (2) the return to Petitioner of his personal belongings, including the above-listed items.

IT IS SO ORDERED.

DATE: November 13, 2026

Patricia Donahue

Patricia Donahue
United States Magistrate Judge